# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| PAUL BYRD, | CASE NO. 5:12CV828 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | MAGISTRATE JUDGE GREG WHITE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | REPORT & RECOMMENDATION |

Plaintiff Paul Byrd ("Byrd") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Byrd's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be affirmed.

## I. Procedural History

On June 9, 2010, Byrd filed an application for DIB, POD, and SSI alleging a disability onset date of January 20, 2009, and claiming that he was disabled due to degenerative disc disease, depression, bipolar disorder, and illiteracy.[1] (Tr. 235-245, 262.)  His application was denied both initially and upon reconsideration.  Byrd timely requested an administrative hearing.

On September 6, 2011, an ALJ held a hearing during which Byrd, represented by counsel, and an impartial vocational expert ("VE") testified.  On September 9, 2011, the ALJ

---

[1] Byrd filed a previous application on January 30, 2007 for DIB, POD, and SSI alleging a disability onset date of July 1, 2006. (Tr. 11.)  This application was denied both initially and upon reconsideration.  Byrd timely requested an administrative hearing.  On March 4, 2010, an Administrative Law Judge ("ALJ") held a hearing, and the next day, issued a decision finding Byrd was not disabled. *Id*.  Byrd did not appeal.

found Byrd was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age 29 at the time of his alleged onset date, Byrd is a "younger" person under social security regulations.  *See* 20 C.F.R. §§ 404.1563 & 416.963.  (Tr. 21.)   Byrd has a marginal education[2] and past relevant work as a construction worker, parts clerk, truck driver, and driver helper.  (Tr. 21, 22.)

### *Medical Evidence Regarding Physical Impairments*[3]

Byrd treated with Lawrence Bouchard, M.D., from January, 2010 through October, 2010. (Tr. 440-551.)  While Byrd consistently reported pain in his back and legs, he was regularly observed to have good strength in his hips and legs.  (Tr. 509, 553, 638, 640, 641, 670, 672, 677.)  On January 27, 2010, he was referred for pain management.  (Tr. 462.)  Vicodin ES was prescribed.  *Id*.  On February 15, 2010, Dr. Bouchard prescribed Percocet and referred him to an orthopedist.[4]  (Tr. 460-461.)  On March 23, 2010, Dr. Bouchard noted that the Ohio Automated Rx Reporting System ("ORRS") indicated that five different physicians were prescribing Byrd medications.  (Tr. 456.)  The doctor noted that no narcotic prescriptions would be prescribed, and that Byrd was not pushing for narcotics.  *Id.*

From April 29, 2010, through January 17, 2011, Byrd was treated by Nilesh Shah, M.D.

---

[2]Byrd completed the ninth grade, but the record indicates, and Byrd acknowledged at the hearing, that he reads and writes at the second grade level.  (Tr. 22.)

[3]The Court addresses Byrd's physical impairments as he challenges only the ALJ's decision regarding the exertional level related to light work.

[4]Although it is not reflected earlier, Dr. Bourchard must have previously referred Byrd to an orthopedist because at the February, 2010 visit, he indicated that Byrd was "again referred to an orthopedist for evaluation of his back.  He did not keep his previous appointment.  Family emergency is his excuse."  (Tr. 460.)

(Tr. 635-642.)

In May, 2010, a magnetic resonance imaging ("MRI") test revealed partially sacralized L5 vertebral body, a small L4-5 right paracentral annular tear and 4 mm disc herniation superimposed on a broad-based posterior disc bulge causing mild mass effect upon the right lateral recess traversing the nerve roots and mild to moderate foraminal narrowing on the right, and an L3-4 central annular tear and a small broad-based disc bulge with mild canal stenosis and mild neural foraminal narrowing. (Tr. 429-431.)

From June, 2010, through October 31, 2010, Byrd was treated by Dhruv Shah, M.D., a pain management specialist. (Tr. 675-678.) Three lumbar epidural injections were administered during this period. (Tr. 664-669.) After Byrd reported no relief from the injections, he was released by Dr. Shah to proceed with lumbar spine surgery. (Tr. 677.)

On January 14, 2011, Byrd was seen by Patrick Riley, M.D. (Tr. 686-687.) Dr. Riley requested the reports of the previous epidural injections and considered performing selective nerve root blocks. (Tr. 686.) The doctor prescribed "a very short couple-day course of Percocet until [Byrd] sees his pain management doctor." *Id*. On March 4, 2011, Dr. Riley noted that nerve root injections would be the best course of action. (Tr. 670.) He also noted that Byrd again requested Percocet, but he prescribed only twenty Tramadol and Flexeril until the pain management doctor could be seen. *Id*. Dr. Riley further noted that he would write no further prescriptions unless Byrd had surgery. *Id.*

Between October 12, 2010, and April 4, 2011, Byrd also visited hospital emergency rooms six times reporting pain and for the most part was treated with medications.[5] (Tr. 509, 553, 564, 579, 596, 690.)

In October, 2010, state agency physician Gerald Klyop, M.D., opined that Byrd could perform the full range of light work. (Tr. 144-145.)

A second MRI in December, 2010 showed a disc herniation at L4-5 slightly enlarged

---

[5]On two visits, the emergency room personnel refused to prescribe medication after reviewing the OARRS report. (Tr. 564, 596.)

3

from the May MRI.  (Tr. 656-658.)

In March, 2011, state agency physician William Bolz, M.D., determined that Byrd was not disabled as there were no RFC assessments associated with the claim.  (Tr. 166-167.)

*Hearing Testimony*

At the hearing, Byrd testified to the following:

- He filed for disability beginning January 20, 2009, because on that date Dr. Roger Akeem found he could not be released to work.[6]  (Tr. 44.)

- He lives with his mother.  (Tr. 45.)  Other than monthly food stamps or borrowing money from his mother, he has no income.  *Id*.

- In approximately 2008, he worked for Auto Zone, but it only lasted for a couple of months because he could not read.  (Tr. 45.)  When driving, other Auto Zone employees would give him short routes and verbal directions.  (Tr. 47.)  He had a difficult time getting out of the truck, so when making deliveries he would ask for help.  *Id*.

- His driver's license was suspended.  (Tr. 46.)  His mother and girlfriend provide transportation.  *Id*.

- He reads and writes at the second grade level.  (Tr. 47.)

- In 2006 he worked at Auto Zone for about two months as a counter person, but was fired when the employer discovered that he needed help reading and typing.  (Tr. 48.)  He also pulled items from stock, but if the parts were heavy (15 to 20 pounds), he would need assistance.  (Tr. 48-49.)

- In 2004 and 2005, he worked as a helper for asphalt companies.  (Tr. 49-50.)

- In 2003, he worked for a construction company.  (Tr. 50.)

- He has worked several other odd jobs for short periods.  (Tr. 50-51.)

- He sometimes feels that everyone is against him and he isolates himself in his bedroom for two or three days per week.  (Tr. 51-52.)

- He experiences severe back pain that prevents him from walking 15 to 20 steps before he has to rest.  (Tr. 52.)  Also, his right leg gives out causing him to fall and his left leg is numb.  (Tr. 52-53.)  He uses a cane, prescribed by Dr. Akeem,[7] in his right hand to steady his gait.  (Tr. 52-53, 57.)

---

[6]The record does not contain any notes on that date or from Dr. Akeem.

[7]There are no notes from Dr. Akeem, and as the ALJ points out, no other notes in the record indicating that a cane was prescribed.  (Tr. 20.)

- He was told by three doctors that he needed surgery on his back. (Tr. 53.)

- After his welfare was taken away, he stopped going to doctors, except to see a counselor at Portage Path. (Tr. 53.)

- During the day he experiences pain in his legs about ninety percent of the time. (Tr. 56.) Medication does not relieve the pain and a TENS unit was ineffective. Therefore, his doctors recommend surgery. (Tr. 57-58.) He was unable to do physical therapy. (Tr. 58.)

- He can sit for about 30 minutes before he has to stand. (Tr. 60.) He can stand for approximately 10 to 15 minutes at a time. *Id.* He can lift and carry a gallon of milk or a bag of bread. *Id.*

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[8]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Byrd was insured on his alleged disability onset date, January 20, 2009, and remained insured through June 30, 2011. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Byrd must establish a continuous twelve month period of disability commencing between these

---

[8]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 & 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Byrd established medically determinable, severe impairments, due to "degenerative disc disease of the lumbar spine with radiculopathy down the right leg, depression, and a history of multiple substance abuse;" however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Byrd was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Byrd was not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists

in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Byrd contends the ALJ did not properly evaluate his pain complaints. (Doc. No. 14 at 14-17.)

7

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. 20 C.F.R. §§ 404.1529 & 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability"). It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing

8

so"). Beyond medical evidence, there are seven factors that the ALJ should consider.[9] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005).

After thoroughly reviewing the medical history, the ALJ found Byrd's claims regarding his pain-related limitations not credible as follows:

> Although the claimant has received medical treatment for his impairments, there is no indication in the record that this treatment has not been beneficial for him. He has received several prescriptions for pain medications but the claimant repeatedly noted that these did not help him. However, he was repeatedly referred to see an orthopedic specialist in early 2010 but failed follow-up. (B5F). Even by October 2010, the claimant still had not followed the advice of Dr. Bouchard. (B9F). In fact, Dr. Bouchard is actually only the claimant's primary care physician, whom the claimant continuously sought orthopedic care from. Furthermore, there are numerous notations in the record that the claimant's motive behind treatment was to seek out particular pain medication. Actually, the claimant has a history of difficulty controlling his narcotic use and taking pain medication that was not part of a current prescription regimen of his. (B5F/17; B7F/20). Even when the Ohio Automated Rx Reporting System (OARRS) noted that the claimant had filled prescriptions, the claimant would consistently tell his physicians that he flushed the medications down the toilet, lost the paper prescription, or did not remember having prescriptions filled. (B6F/22; BI0F/6). More so, the OARRS documented that the claimant was receiving narcotic medications from at least five different medical professionals at one time. (B5F/2S; B9F/2S; BIIF/S). He has also presented to the emergency room two days in a row requesting pain medications; he has visited the emergency department on several other occasions, despite treating with Dr. Bouchard for his pain. (B9F/2S,4S). Even the claimant's psychiatrist noted that the claimant becomes irritable, agitated, and argumentative when he is not prescribed certain medications. (B6F17; BI0FIS). It appears this is because the claimant feels "entitled" to such. (B6F/22; BI0F/19). The claimant also has admitted on a few occasions, that he is a compulsive liar. (B6F 12). Additionally, the claimant is repetitively noted as using a cane but there is no indication in the record that the claimant was ever medically advised to use one.

---

[9]The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

\* \* \*

> Thus, even if I find that the claimant's impairments could be expected to produce the alleged symptoms, the intensity of them is not consistent with the totality of the medical evidence.

(Tr. 20-21.) The ALJ noted that Byrd repeatedly reported that the prescribed pain medications were not helping. However, despite his treating doctor's suggestions to see an orthopedic specialist in early 2010, Byrd failed to do so. Byrd contends that the ALJ ignored evidence that he sought orthopedic consultations with Patrick Riley, M.D., and the St. Thomas orthopedic clinic. (Doc. No. 14 at 17.) The record reflects that Byrd did seek treatment, but Dr. Riley referred him back to the pain management doctor because Byrd was requesting Percocet, which Dr. Riley refused to order unless Byrd had surgery. (Tr. 670.)

The ALJ also discussed Byrd's drug-seeking behavior. (Tr. 20-21.) The ALJ noted that the ORRS indicated that Byrd had received narcotic prescriptions from at least five different medical professionals at one time. (Tr. 20.) Courts have found that a claimant's drug-seeking behavior coupled with refusals by treating physicians to prescribe narcotics is sufficient to undermine the claimant's credibility. *See Thompson v. Comm'r of Soc. Sec.*, 2012 WL 1340443, \*17 (*citing Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009) ("[T]here is sufficient evidence in the record to support the ALJ's determination that Ms. Poppa's credibility about her pain and limitations was compromised by her drug-seeking behavior.")

Additionally, it is well-settled that a claimant need not be pain-free or experiencing no discomfort in order to be found employable. *See Qantu v. Barnhart*, 72 Fed. App'x 807, 811 (6th Cir. 2003) ("[I]t is clear from the ALJ's decision that she accepted that claimant suffered some pain, but found that her pain was not disabling. We emphasize that a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled." (*citing Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988)). As such, substantial evidence supports the ALJ's finding that Byrd's pain complaints were not fully credible.

### *RFC Analysis*

Byrd contends that the RFC determination that he was able to perform the full range of light work is inconsistent with the medical evidence. (Doc. No. 14 at 18-19.) Specifically, Byrd

contends that the ALJ's assessment failed to recognize the MRIs disclosed disc bulges and annular tears in the spinal lumbar region.  (Doc. No. 14 at 18-19.)  He further contends that the ALJ disregarded that Byrd was noted to ambulate with a cane and that examination notes indicated spinal and paraspinal tenderness in the lumbar region as well as positive straight leg raises.  *Id*.

A claimant's RFC is the most that he can still do despite his functional limitations.  20 CFR §§ 404.1545(a) & 416.945(a); SSR 96-8p.  The assessment must be based upon all of the relevant evidence, including the medical records and medical source opinions.  20 CFR §§ 404.1546(c) & 416.946(c).  The final responsibility for deciding the RFC "is reserved to the Commissioner."  20 CFR §§ 404.1527(e)(2) & 416.927(e)(2).  "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec*., 2012 WL 1028105 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs*., 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec*., 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).  Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide a basis for overturning the Commissioner's RFC determination. *Carter*, 2012 WL 1028105.

The Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence.  *See, e.g., Ford v. Comm'r of Soc. Sec.*, 114 F.App'x 194 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.,* 342 Fed. App'x 149, 157 (6th Cir. 2009).  "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."  *Poe*, 342 at 157.

The ALJ determined that Byrd was capable of performing light work as follows:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is limited to simple, routine tasks with no more than occasional and superficial interaction with the public, coworkers, and supervisors.  Instruction should be by demonstration with any reading and writing required in the training or on the job at no more than the second grade level.

11

\* \* \*

> As for the opinion evidence, Gerald Klyop, M.D., a State agency medical consultant, opined on October 20, 2010 that the claimant could perform a full range of light exertional work. (B4A/6-7; B5A/6-7). This opinion is given great weight in this case because, although Dr. Klyop was unable to review and incorporate the evidence received at the reconsideration and hearing levels into his opinion, his opinion is consistent with the evidence that existed at the time of his review.
>
> Another State agency medical consultant, William Bolz, concluded on March 31, 2011 that the claimant did not suffer any severe physical impairments. (B8A/7-8; B9A/7-8). This opinion is given little weight in this case because it fails to give sufficient consideration to the lumbar spine MRI results; thus, it is inconsistent with the record as a whole.

(Tr. 15 & 21.)

Byrd contends that the ALJ ignored the MRI findings. (Doc. No. 14 at 19.) No treating physician, however, completed a RFC limiting Byrd's capacity to work based upon the results of the MRIs. Though there is a medical opinion confirming Byrd's diagnosis of degenerative disc disease and the ALJ found it to be a severe impairment, a claimant must also show that the condition is of such a severity as to be disabling. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). Byrd has not provided an opinion that his back disorder is disabling or limits his functional abilities. Moreover, regarding Byrd's use of a cane to ambulate, the ALJ noted that physicians indicated that he used a cane, but that the record did not reflect that it was medically prescribed. (Tr. 16-20.)

The ALJ gave great weight to the State Agency physician, Dr. Klyop, who determined in October, 2010, that Byrd could perform a full range of light exertional work, finding this opinion was consistent with other evidence. (Tr. 152-153.) On the other hand, the ALJ gave little weight to Dr. Bolz, another State Agency medical consultant, who concluded in March, 2011, that Byrd suffered from no physical impairments, as Dr. Bolz's opinion failed to consider the lumbar spine MRI results. The ALJ properly accounted for Byrd's impairments by limiting him to light work.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported  by substantial evidence.  Accordingly, the decision of the Commissioner should be affirmed.


                                                              s/ Greg White
                                                              United States Magistrate Judge

Date:   January 14, 2013

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).